IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| F. SCOTT WINSLOW, | : | |
| | : | |
| Plaintiff | : | Civ. No. 1:08-0785 |
| | : | |
| v. | : | |
| | : | |
| PRISON HEALTH SERVICES, INC., | : | |
| STANLEY STANISH, M.D., | : | |
| RENATO DIAZ, M.D., | : | |
| and JENNIFER PORTA, P.A., | : | J. RAMBO |
| | : | |
| Defendants | : | |

# M E M O R A N D U M

Before the court is Defendants', Prison Health Services, Inc. ("PHS"), Stanley Stanish, M.D., Renato Diaz, M.D., and Jennifer Porta, P.A., motion for summary judgment. The motion has been fully briefed and is ripe for disposition.

I.   **Background**

   A.  **Facts**[1]

This case arises out of Plaintiff's allegations that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment due to their treatment of Plaintiff's hernia while incarcerated at State Correctional Institute-Retreat ("SCI-Retreat"). (Defs.' Statement of Material Facts ("SMF") ¶¶ 2, 10.) The facts leading up to, and the treatment of, Plaintiff's hernia are as follows.

On August 19, 2007, while working at the prison, Plaintiff felt a "pop" and later noticed a lump in his groin. (SMF ¶ 11.) One week later, on August 27, 2007, Plaintiff reported his injury to medical staff and said he had been self

---

[1] In *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148–49 (3d Cir. 2002), the Third Circuit reaffirmed its supervisory rule first announced in *Vadino v. A. Valey Engineers,* 903 F.2d 253, 259 (3d Cir.1990) that "the district courts in this circuit [must] accompany grants of summary judgment hereafter with an explanation sufficient to permit the parties and this court to understand the legal premise for the court's order." *Vadino*, 903 F.2d at 259. Here, the court will identify those facts that are subject to genuine dispute, and cite to the record in order to highlight the precise nature of any disputed facts. The court will not cite to the record where the facts are undisputed; instead, the court will rely on the statements of material fact and admissions submitted by the parties. The materiality of any genuinely disputed facts will be analyzed in the discussion section below.

   Plaintiff does not dispute many of Defendants' statement of material facts. Instead, Plaintiff merely claims that the underlying documents relied on by Defendants say what Defendants claim. By way of example, Plaintiff responds to paragraphs 10-13 of Defendants' statement of uncontested facts by stating: "These do not appear to be a concise statement of uncontested material facts. Rather, Defendants are setting forth selected allegations from Plaintiff's Complaint, which is referred to as Exhibit A. It is uncontested that Exhibit A is Plaintiff's Complaint, which sets forth his original allegations." (Doc. 54 ¶¶ 10-13.) The Plaintiff uses the same language when Defendants cite to other exhibits before the court. Plaintiff does not, however, directly dispute most of the facts. Those facts not directly disputed will be taken as uncontested.

medicating with ibuprofen from the commissary, but that he could no longer get this medication because he had been transferred to the Restricted Housing Unit ("RHU"). (SMF ¶¶ 15-16.) He was told on this date that the following day someone from the medical department would be able to see him. (SMF ¶ 15.)

On August, 28, 2007, Plaintiff was seen by Defendant Porta, a physician's assistant. (SMF ¶ 16.) Porta examined Plaintiff's groin and saw no discoloration; however, Plaintiff reported that it was tender to the touch. (SMF ¶ 17.) Porta indicated in her report that Plaintiff appeared to have a hernia in the left inguinal area,[2] but that it appeared to be reducible and that Motrin had been helping up until Plaintiff's transfer to the RHU. (Defs.' Br. in Supp. of Mot. to Dismiss, Doc. 50, Ex. C.) Porta prescribed Motrin for Plaintiff and told him to sign-up for sick call if the symptoms worsened. (SMF ¶ 17.) The Motrin prescription was to end on September 11, 2007. In addition, Porta instructed Plaintiff "not to participate in sports, weight lifting, intensive labor, pushing, pulling, or lifting anything above 15 pounds." (SMF ¶ 18.)

---

[2] A hernia is defined as a "[p]rotrusion of a part or structure through the tissues normally containing it." STEADMAN'S MED. DICT., 879 (Lippincott, Williams & Wilkins, 28th Ed. 2006) (1911). An left inguinal hernia would be on the left side of the pelvis and would either involve "the deep epigastric artery and the edge of the rectus muscle," or "the internal inguinal ring [which] passes into the inguinal canal." *Id.* at 880.

On September 7, 2007, an SCI- Retreat nurse evaluated Plaintiff before he was formerly placed in the RHU. (SMF ¶ 19.) The nurse noted that there were no medical conditions that would make Plaintiff ineligible for RHU placement. (*Id.*) There was no mention in the nurse's notes of Plaintiff voicing any complaints about pain or a hernia.

On January 14, 2008, Plaintiff was examined by Defendant Diaz for complications relating to his asthma. (SMF ¶ 20.) No mention was made in Dr. Diaz's notes of any complaint of pain or suffering relating to Plaintiff's hernia.

On January 18, 2008, Plaintiff was again examined by Porta. (SMF ¶ 21.) He was upset and said he had been seen by a doctor twice and by another physician's assistant and that they had told him he would be getting a surgical consult for his hernia. (*Id.*) Plaintiff did not, and has not, provided the names or dates of these medical consultations, and there is nothing in the medical records to support Plaintiff's contention. Porta examined Plaintiff again and found that she could not determine whether the hernia had moved into Plaintiff's scrotum but that it was soft and reducible. Plaintiff told Porta that he had no blood in his stools and that he was not experiencing difficulty with bowel movements. He was also able to move without difficulty when entering and exiting the medical department. Porta

believed that Plaintiff's condition was stable and scheduled him to visit with Defendant Stanish. She told Plaintiff to return to the medical department as needed. (*Id.*)

Plaintiff did not return to the medical department until January 28, 2008, when he was scheduled to meet with Dr. Stanish. (SMF ¶ 22.) When Dr. Stanish examined Plaintiff he found a slightly enlarged area in the groin region. He was able to insert his finger into the area of the hernia with minimal discomfort to Plaintiff. Dr. Stanish found that the hernia appeared to be reducible and there were no signs that the testicular region was involved. (*Id.*) Dr. Stanish concluded that there was no need for surgery because there was no strangulation,[3] and because it appeared that the hernia had already reduced in size and was further reducible. (SMF ¶ 23.) Dr. Stanish told Plaintiff that he was not a candidate for surgery and that any such surgery would be an elective procedure which, outside of prison, only some insurance carriers would cover. (*Id.*) Plaintiff continued to insist that he wanted his hernia repaired surgically. (*Id.*) Dr. Stanish believed that a hernia belt

---

[3] "Strangulation" describes an irreducible hernia in which circulation has stopped. Gangrene can occur if not treated promptly. STEADMAN'S MED. DICT., 881 (Lippincott, Williams & Wilkins, 28th Ed. 2006) (1911).

was the proper treatment, and, after informing Plaintiff of this, ordered the belt. (SMF ¶¶ 24-25.) In addition to ordering the hernia belt, Dr. Stanish prescribed Motrin for fourteen days and ordered that Plaintiff be placed on restricted activity. (SMF ¶ 25.) The next day, January 29, 2008, Plaintiff returned to the medical department to receive his hernia belt. However, Plaintiff felt it was too big and another belt had to be ordered. (SMF ¶ 26.)

On February 11, 2008, Defendant Diaz examined Plaintiff. (SMF ¶ 27.) Dr. Diaz believed that the hernia was reducible. He noted that both inguinal rings were fine and that the area around the hernia and the testicles were unremarkable. (*Id.*) Dr. Diaz prescribed Plaintiff Motrin and ordered him a scrotal support.[4] (SMF ¶ 28.)

On February 19, 2008, Plaintiff returned to the medical department complaining of discomfort in his left groin area and difficulty with bowel movements. (SMF ¶ 29.) He requested Motrin and Metamucil, both of which were provided. (*Id.*) Porta examined him and determined that he was able to move without pain and an examination of his testicles revealed no abnormalities. There was no blood in Plaintiff's stool and he was not experiencing abdominal pain. No

---

[4] It is unclear from the record whether the scrotal support was in lieu of, or in addition to, the hernia belt, or whether Plaintiff ever actually received the scrotal support. It is clear however, that Plaintiff did later receive a proper hernia belt.

hernia was protruding at this time. Porta concluded that Plaintiff's condition was stable and she told him to return to the medical department as needed. (*Id.*)

On February 22, 2008, Plaintiff received his hernia belt.[5] (SMF ¶ 30.)

## II. <u>Procedural History</u>

On April 28, 2008, Plaintiff filed a *pro se* complaint with the court. (Doc. 1.) Defendants filed a motion to dismiss on July 17, 2008. (Doc. 19.) On October 23, 2008, this court granted in part and denied in part Defendants' motion. (Doc. 26.) The motion was granted as to any claims which arose after Plaintiff received his hernia belt on February 22, 2008. The motion was denied in all other aspects. On January 26, 2009, David E. Heisler, Esquire, entered his appearance on Plaintiff's behalf. (Doc. 33.)

On November 30, 2009, Defendants filed this motion for summary judgment and brief in support. (Docs. 48, 50.) Before responding to the summary judgment motion, Plaintiff filed a motion for reconsideration of Plaintiff's motion to

---

[5] Both parties go into great detail concerning Plaintiff's medical treatment after the hernia belt was received. However, these facts are impertinent as this court has already concluded that the medical treatment after the Plaintiff received the hernia belt does not rise to the level of cruel and unusual punishment or deliberate indifference so as to support an Eighth Amendment claim. (*See* Doc. 26, Memo. & Order.)

dismiss and brief in support. (Docs. 52-53.) This motion for reconsideration was denied on January 13, 2010. (Doc. 66.)

On December 14, 2009, Plaintiff filed his brief in opposition to Defendants' summary judgment motion. (Doc. 55.) Defendants replied on December 29, 2009. (Doc. 63.) The motion is now ripe for consideration.

**III.      Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Upon such a showing, the burden then shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**IV.     Discussion**

Plaintiff argues that Defendants' failure to take adequate steps to treat his hernia constitutes cruel and unusual punishment in that they were deliberatly indifferent to a serious medical need, in violation of his Eighth Amendment rights. Plaintiff alleges that Defendants' actions took place under color of state law in violation of 42 U.S.C. § 1983.

The individual Defendants request summary judgment because Plaintiff has failed to produce evidence that they were deliberately indifferent to Plaintiff's serious medical needs. Furthermore, they argue, even if the actions they took were inappropriate, they were at most negligent, which is insufficient to support a cause of action under the Eighth Amendment.

Defendant PHS argues that summary judgment is appropriate because Plaintiff has not shown evidence of a custom, policy, or practice, of PHS which caused his alleged injuries.

The court will discuss each of these arguments in turn.

**B.     Individual Defendants**

The Eighth Amendment to the United States Constitution forbids a state from exacting cruel and unusual punishment on prisoners. *See* U.S. CONST. AMEND VIII. This includes any unnecessary or wanton infliction of pain on a prisoner.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). While incarcerated, a prisoner is entitled to medical care from the state and the withholding of such care, under certain circumstances, can constitute an Eight Amendment violation. *Id.* at 103. Prison officials can be shown to have violated an inmate's Eighth Amendment rights if it appears (1) there was a serious medical need of the prisoner, and (2) prison officials were deliberately indifferent to that need. *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978) (citing *Estelle*, 429 U.S. at 106). As to the first prong, serious medical needs range from those which, if left untreated, would produce "physical torture or lingering death," to less serious cases causing "pain and suffering which no one suggests would serve any penological purpose." *Id.* at 103 (internal citations omitted). The second prong, deliberate indifference, includes "intentionally denying or delaying access to medical care or intentionally interfering with the care once prescribed." *Estelle*, 429 U.S. at 105. The deliberate indifference prong is evaluated subjectively, in that, prison officials are not liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However, negligence, mistake, difference of opinion, medical malpractice or the failure to order testing, do not exhibit the culpable mental state giving rise to

an Eighth Amendment violation.[6] "Deliberate indifference, therefore, requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (internal citations and quotations omitted).

Plaintiff in this case has failed to demonstrate that Defendants were deliberately indifferent to his serious medical needs.[7] Plaintiff first reported his pain to Defendant Porta on August 28, 2007- a week after the injury occurred. He was prescribed Motrin at this time and told to return on an "as needed" basis. Plaintiff did not return to the medical department complaining of pain associated with his hernia for five months. Specifically, on September 7, 2007, Plaintiff was evaluated by a nurse before being admitted to the RHU. He did not complain of pain due to his hernia during this visit. On January 14, 2008, Defendant Diaz examined Plaintiff for issues relating to Plaintiff's asthma. Plaintiff did not report any pain due to his hernia during this visit.

---

[6] Ample caselaw supports these principles. *See, e.g., Estelle*, 429 U.S. at 107 (medical decision not to order an X-ray does not constitute cruel and unusual punishment); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2002) (claims of medical malpractice, absent an allegation of a culpable state of mind, do not constitute deliberate indifference); *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987) *cert. denied*, 486 U.S. 106 (1988) (disagreement over the type of medical treatment does not give rise to a constitutional violation).

[7] When deciding Defendants' motion to dismiss, this court already concluded that a hernia constitutes a "serious medical need." (Doc. 26, at 8.)

It was not until January 18, 2008, that Plaintiff went to the medical department again complaining of pain caused by a hernia. At this time Defendant Porta again thought the hernia was reducible on its own and that Plaintiff's condition was stable. Porta scheduled Plaintiff to meet with Dr. Stanish and told Plaintiff to return to the medical department if necessary before his scheduled appointment.[8]

Plaintiff did not return again till he was scheduled to meet with Dr. Stanish on January 28, 2008. Dr. Stanish noticed that the hernia had apparently reduced in size, and he was able insert his finger into the area of the hernia with minimal pain to Plaintiff. Although Plaintiff at this time insisted on surgery, Dr. Stanish felt that a hernia belt was the proper method of treatment. Dr. Stanish also prescribed Plaintiff Motrin and instructed that he be placed on restricted activity.

On February 11, 2008, Dr. Diaz examined Plaintiff and concurred in the conclusions of Stanish and Porta- that the hernia was reducible and that there was nothing remarkable in the testicular region. Dr. Diaz ordered Plaintiff a scrotal support and prescribed him Motrin for any pain.

---

[8] Plaintiff relayed to Porta at this time that he had been seen by a doctor twice and by another physicians assistant. However, Plaintiff provides no evidence of this, not even names or dates. Plaintiff's medical records are completely void regarding such visits. At this stage in the litigation, Plaintiff must come forward with some evidence to support this allegation. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiff has failed to do so here.

On February 19, 2008, Plaintiff reported to the medical department claiming of pain and trouble with bowel movements. Defendant Porta prescribed him Motrin and Metamucil and also did an examination where no abnormalities were found. Plaintiff was told to return as needed. On February 22, 2008, Plaintiff received his hernia belt.

Plaintiff has produced no evidence to show that any of the Defendants displayed deliberate indifference to his serious medical need. In fact, each time Plaintiff went to the medical department he was treated. Defendants' conduct does not rise to a level of deliberate indifference merely because Plaintiff does not agree with the treatment provided. Even if, Defendants' conduct, by treating Plaintiff with a hernia belt instead of surgery, might be described as negligent, negligent conduct, although possibly enough to support a medical malpractice claim, does not support a claim for deliberate indifference of a serious medical need in violation of the Eighth Amendment. *See Rouse v. Pantier*, 182 F.3d 192 (3d Cir. 1999). Furthermore, Plaintiff's expert opinion that surgery was the proper course of treatment for his hernia will also not support an Eighth Amendment violation. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (disagreement over whether non-surgical or surgical treatment was appropriate for prisoner's hernia not sufficient to

support an Eighth Amendment claim). Therefore, Defendants' motion on this issue will be granted.

### A. PHS

A private corporation may be held liable for § 1983 constitutional violations if, while acting under color of state law, the corporation knew of and acquiesced in the deprivation of a plaintiff's rights. *Miller v. City of Philadelphia*, No. CIV.A.96-3578, 1996 WL 683827, at *3-4 (E.D. Pa. Nov. 26, 1996) (citing *Monell v. New York City Dep't of Sec. Serv.*, 436 U.S. 658, 694-95 (1978)). To establish liability regarding a private corporation, the plaintiff must show that the corporation, "with 'deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.' " *Id.* at *4 (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989), *cert. denied*, 493 U.S. 1044 (1990)).

In this case, Plaintiff claims that PHS had a policy of denying necessary medical treatment for serious medical needs in an effort to save money. (Compl., Doc. 1 ¶ 8.) Plaintiff claims that because Defendant Stanish worked in a supervisory capacity as the Regional Medical Director for PHS and as a physician at SCI-Retreat, he was a policymaker for PHS. (SMF, Ex. K ¶ 2; Pl.'s Statement of Uncontested Facts, ¶ 132.) However, Plaintiff cites to no specific policy of PHS and

15

for his part, Dr. Stanish maintains that he has no policymaking powers at PHS and that PHS has never told him to withhold medical treatment due to cost. (Doc. 63-2, Verification of Dr. Stanley Stanish.) Regardless, even taking Plaintiff's allegation as true — that Dr. Stanish is a policymaker for PHS and that either PHS or Dr. Stanish, or both, had a policy of withholding medical treatment due to cost — Plaintiff has still failed to state a cause of action under the Eighth Amendment. Plaintiff was not denied medical treatment, he simply did not receive the specific treatment he requested. As discussed *infra* Section IV. B., Defendants' conduct was not wanton or deliberately indifferent. Even if PHS ultimately did have a policy of withholding necessary medical care due to cost, this does not establish that this policy in anyway affected Plaintiff during the August 2007 to February 2008 time period. The three times Plaintiff presented to the medical department complaining of pain due to his hernia, he received medical treatment. Plaintiff simply did not receive the immediate treatment he requested. This is not sufficient to sustain that Plaintiff was harmed by the alleged policy, practice or custom of PHS. As such, Defendants' motion on this issue will be granted.

## V. Conclusion

Plaintiff has failed to present evidence that individual Defendants Porta, Diaz, and Stanish acted with deliberate indifference when treating his hernia. In addition, since the individual Defendants did not act with deliberate indifference, it cannot be shown that PHS had a policy, practice or custom which violated Plaintiff's Eighth Amendment rights. As such, Defendants' motion for summary judgment will be granted. An appropriate order will issue.

s/Sylvia H. Rambo  
United States District Judge

Dated: February 12, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| F. SCOTT WINSLOW, | : | |
| Plaintiff | : | Civ. No. 1:08-0785 |
| v. | : | |
| PRISON HEALTH SERVICES, INC., STANLEY STANISH, M.D., RENATO DIAZ, M.D., and JENNIFER PORTA, P.A., | : | J. RAMBO |
| Defendants | : | |

# **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motion for summary judgment. (Doc. 48), is **GRANTED**. The clerk of court is directed to enter judgment for Defendants against Plaintiff and to close the case.

                                                             s/Sylvia H. Rambo
                                                           United States District Judge

Dated: February 12, 2010.